**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jettie May Hawkins,<br><br>                Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>                Defendant. | No. CV-13-02248-PHX-JZB<br><br>**ORDER** |

      Plaintiff Jettie May Hawkins seeks judicial review and reversal of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for Social Security disability benefits. For the following reasons, the Court will affirm the ALJ's decision.[1]

**I.    Background**

      On January 29, 2010, Plaintiff filed an application for Social Security disability insurance benefits under Title II of the Social Security Act. (AR[2] 17.) Plaintiff alleged that she became unable to work in May 2008 due to spinal degenerative disc disease, arthritis in her knees, recurring patellar subluxations, headaches, and depression. (AR 19.) On August 13, 2010, the SSA denied Plaintiff's application (AR 91-94), and on March 3, 2011, the SSA denied Plaintiff's request for reconsideration (AR 96-99).

---

[1] This matter is suitable for resolution based on the briefs. Accordingly, the Court denies Plaintiff's request for oral argument. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

[2] Citations to "AR" are to the administrative record.

1  Pursuant to Plaintiff's Request (AR 102), a hearing was held on June 15, 2012, before
2  Administrative Law Judge ("ALJ") Patricia Bucci (AR 17). On July 31, 2012, the ALJ
3  issued a decision ruling that Plaintiff is not disabled and, therefore, is not entitled to
4  disability benefits. (AR 17, 21.) On September 19, 2013, the Appeals Council denied
5  Plaintiff's request for review of the ALJ's decision, and the decision became the final
6  decision of the Commissioner of the SSA. (AR 1-3.)

7  Having exhausted the administrative review process, on November 4, 2013,
8  Plaintiff sought judicial review of the ALJ's decision by filing a Complaint in this Court
9  pursuant to 42 U.S.C. § 405(g). (Doc. 1.) On July 1, 2014, Plaintiff filed an Opening
10 Brief, seeking remand for an award of disability benefits for the period of May 16, 2008,
11 through July 31, 2012. (Doc. 26.) On July 31, 2014, Defendant filed a Memorandum in
12 Support of the Commissioner's Decision. (Doc. 28.) On September 2, 2014, Plaintiff
13 filed a Reply Brief. (Doc. 34.)

14 **II.   Legal Standards**

15 In reviewing the decision of the ALJ, the Court must affirm the ALJ's decision
16 unless it contains legal error or is not supported by substantial evidence. *Orn v. Astrue*,
17 495 F.3d 625, 630 (9th Cir. 2007); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990).
18 Substantial evidence means more than a mere scintilla, but less than a preponderance; "it
19 is such relevant evidence as a reasonable person might accept as adequate to support a
20 conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *see also*
21 *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). In reviewing whether substantial
22 evidence supports the ALJ's decision, the Court must consider the record as a whole,
23 weighing both the evidence that supports and that which detracts from the ALJ's
24 conclusions. *Reddick*, 157 F.3d at 720; *Tylizki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir.
25 1993). Where "the evidence can reasonably support either affirming or reversing a
26 decision, [the Court] may not substitute its judgment for that of the [the ALJ]." *Andrews*
27 *v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "However, a reviewing court must
28 consider the entire record as a whole and may not affirm simply by isolating a specific

quantum of supporting evidence." *Orn*, 495 F.3d at 630 (internal quotations and citations omitted). The Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.*

## III.   Five-Step Sequential Evaluation Process

To be eligible for Social Security disability benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

A five-step procedure is used to determine whether an applicant is eligible for disability insurance benefits. The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett*, 180 F.3d at 1098.

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. In step two, the ALJ determined whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). If the answer is no, the claimant is not disabled. If the answer is yes, the ALJ proceeds to step three and determines whether the impairment meets or equals a "listed" impairment that the ALJ has acknowledged to be so severe as to preclude substantial gainful activity. If this requirement is met, the claimant is conclusively presumed disabled; if not, the ALJ proceeds to step four. At step four, the ALJ determines whether the claimant can perform "past relevant work." If the claimant meets the burden of establishing an inability to perform prior work, the ALJ must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy.

*Reddick*, 157 F.3d at 721 (citing 20 CFR §§ 404.1520, 416.920).

Here, at step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2014, and Plaintiff has not engaged in substantial gainful activity since May 16, 2008. (AR 19.) At step two, the ALJ found that Plaintiff suffers from the following severe impairments: obesity, lumber degenerative disk disease, mild cervical degenerative disc disease, depression, headaches,

intermittent/recurring patellar subluxations, and bilateral knee osteoarthritis. (AR 19.) At step three, the ALJ determined that the severity of Plaintiff's impairments does not meet or equal the criteria of the any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 20.) At step four, the ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), with the following additional limitations:

> no more than occasional climbing ladders, ropes, or scaffolds; no more than occasional crouching, kneeling, or crawling; no more than frequent climbing stairs or ramps; no more than frequent balancing or stooping; no concentrated exposure to extreme heat, excessive noise, dangerous machinery with moving mechanical parts, or unprotected heights; understanding, remembering and carrying out no more than simple routine tasks consistent with unskilled work; the claimant [is] limited to low-stress work settings defined as making no more than occasional simple decisions and no more than occasional changes in the work setting; and no more than occasional interaction with the public, though the claimant can be around the public.

(AR 21.) The ALJ further found that Plaintiff possessed the residual functional capacity to perform her previous work. (AR 26-28.) Alternatively, at step five, the ALJ found that Plaintiff could perform work that exists in the national economy, given her age, education and work experience. (AR 28.) Accordingly, the ALJ determined that Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act. (AR 29.)

**III. Discussion**

Plaintiff argues that the ALJ's decision is defective for the following reasons: (1) the ALJ incorrectly evaluated the opinions of Plaintiff's treating physician, Dr. Jack J. Hawks, relying instead on the report of a state agency, non-examining physician; and (2) the ALJ improperly rejected Plaintiff's symptom testimony. (Docs. 26, 34.) In response, Defendant argues that the ALJ properly weighed all of the medical opinions and evaluated Plaintiff's subjective complaints, and the ALJ's decision is supported by substantial evidence. (Doc 28.) The Court addresses each of these arguments below.

**A. Medical Opinion Evidence**

Plaintiff argues that the ALJ improperly weighed the medical opinions of

- 4 -

Plaintiff's treating physician, Dr. Hawks, and instead relied on the assessment of Melvin Roberts, M.D., a state agency physician. (Doc. 26 at 1.) The Court will address the ALJ's treatment of each opinion below.

### 1. Legal Standard

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including the length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

### 2. Dr. Hawks' Opinions

Plaintiff began seeing Dr. Hawks in May 2008 at the onset of her alleged disability and has continued to seek treatment from him though the time of the ALJ's decision in July 2012. (AR 236.) On June 22, 2011, Dr. Hawks completed a Medical Assessment of Plaintiff's Ability to do Work Related Physical Activities and offered the following opinions: Plaintiff's lower back pain and radiculitis limit her ability to perform work-related activities; Plaintiff must alternate between standing and sitting every 30 to 45 minutes; Plaintiff can only sit for about two hours at a time; and Plaintiff is completely restricted from stooping, crouching, and crawling. (AR 509-11.) That same day, Dr. Hawks also completed a Pain Functional Capacity Questionnaire and opined that Plaintiff suffered from moderately severe pain that seriously affects her ability to function; Plaintiff frequently experiences severe pain that interferes with her attention and concentration; and Plaintiff frequently experiences deficiencies in concentration, persistence, or pace that result in failure to complete tasks in a timely manner. (AR 513.) The ALJ accorded Dr. Hawks' opinions no weight. (AR 24-25.)

Dr. Hawks' opinions were contradicted by the opinions of Dr. Roberts, a state agency reviewer. (AR 84-86.) Dr. Roberts determined that Plaintiff had greater physical abilities than those identified in Dr. Hawks' opinions. The ALJ could, therefore, discount Dr. Hawks' opinions for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-831.

The ALJ discounted Dr. Hawks' opinions for the following reasons: (1) the opinions were not supported by objective evidence, including MRI's; (2) the opinions were conclusory with no supporting contemporaneous treatment notes, and were inconsistent with his own treatment notes and other clinical laboratory findings; (3) Dr. Hawks is not a specialist; (4) the opinions were contradicted by the opinions of the consultative examiner and Dr. Roberts; and (5) the opinions were contradicted by Plaintiff's daily activities. (AR 24.)

The Court finds that the ALJ provided specific and legitimate reasons supported

by substantial evidence for rejecting Dr. Hawks' opinions. First, the ALJ cited to several MRI scans that revealed degenerative changes in the lumbar spine, but did not indicate any other changes. (AR 274-75, 284-91, 464-67, 514.) A December 8, 2008 MRI scan of the cervical spine revealed no damage to the cervical spine. (AR 284, 464.) A January 1, 2011 MRI scan that revealed no changes to the cervical spine and "minimal degenerative disk disease at C4-5." (AR 514.) A September 9, 2011 MRI scan of Plaintiff's knee revealed a slight tear in her knee and some osteoarthritis, but, as the ALJ noted, Plaintiff ceased to mention any knee pain after attending physical therapy. (AR 338-40.) Finally, a July, 21 2011 MRI scan of Plaintiff's brain was deemed "unremarkable" and revealed no medical cause for Plaintiff's headaches. (AR 275.) The ALJ appropriately relied on this objective medical evidence in discounting Dr. Hawk's opinions. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole or by objective medical findings).

Second, the ALJ also discounted Dr. Hawks' opinions because they were conclusory with no supporting contemporaneous treatment notes, and his opinions were inconsistent with his own treatment notes and other clinical laboratory findings. A review of the records cited to and discussed by the ALJ show that Dr. Hawks' treatment notes recorded several instances in which Plaintiff reported that her pain was stabilized or improving. (AR 312, 319, 324, 326, 332, 361-62, 395, 401, 403, 420.) For example, in a February 14, 2012 treatment record, Dr. Hawks stated that Plaintiff's "pain is currently controlled, and she is tolerating the medications well." (AR 600.) He also noted that Plaintiff "denied any current side effects." (AR 600.) Treatment notes likewise indicated that Plaintiff rarely complained of any side effects resulting from various forms of medication. (AR 480, 590, 596, 600, 608, 619.) The ALJ also specifically cited to a report from Arizona Orthopedic & Fracture Surgeons where Plaintiff reported that her pain had "significantly improved." (AR 297.)

Third, the ALJ disregarded Dr. Hawks' opinions because they were contradicted

by the opinions of Dr. Roberts, a state agency medical consultant. On February 28, 2011, Dr. Roberts completed a Physical Residual Functional Capacity Assessment and opined that Plaintiff retained the physical residual functional capacity to: lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk and sit about six hours in an eight-hour day; push/pull within her lifting capacity; climb ladders/ropes/scaffolds, kneel, crouch, and crawl occasionally; climb ramps/stairs, balance, and stoop frequently; and perform work allowing avoidance of concentrated exposure to extreme heat, noise, and hazards such as machinery or heights. (AR 84-86.) Dr. Roberts further opined that Plaintiff had no manipulative, visual, communicative, or other environmental limitations. (AR 84-86.) The ALJ accorded Dr. Roberts' opinions significant weight because they were "supported by the objective evidence, reasonably accommodating the claimant's degenerative disc disease and knee subluxations managed with conservative treatment; and the opinion took into consideration the claimant's self-reported daily activities and other allegations." (AR 24.) In her decision, the ALJ cited to several records showing that Dr. Roberts' opinions regarding Plaintiff's limitations were consistent with other objective medical evidence in the record. (AR 401, 420, 608, 612, 615, 619.)

The ALJ also relied on the findings from a 2010 consultative examination by Dr. Brian Biggs, which supported Dr. Roberts' findings. Plaintiff reported to Dr. Briggs that she was limited in her activities due to back and knee pain, but upon completing the exam, Dr. Briggs found only "minor objective findings which do not impose physical limitations." (AR 368.) Dr. Biggs noted a normal range of motion of the spine with no complaints of pain, the ability to fully straighten her legs while sitting, and no swelling or tenderness of the joints. (AR 368.) While the ALJ accorded no weight to the Dr. Briggs' opinions regarding Plaintiff's functional limitations because the overall record indicated the existence of some exertional limitations, the ALJ found his objective examination findings probative and persuasive of Plaintiff's ability to perform work consistent with the ALJ's assessed RFC. (AR 23.) Dr. Roberts' opinions, combined with other objective medical evidence, constitute a specific and legitimate reason to discount Dr. Hawks'

opinions. *See Batson*, 359 F.3d at 1195.

Additionally, the ALJ rejected Dr. Hawks' opinions because he was not a specialist and because his opinions were inconsistent with Plaintiff's self-reported daily activities. The Court agrees that these reasons are not sufficiently explained by the ALJ. However, based on the other specific and legitimate reasons the ALJ provided for her treatment of Dr. Hawks' opinions, which are supported by substantial evidence, the Court does not find reversible error.[3] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[I]n each case we look at the record as a whole to determine whether the error alters the outcome of the case."); *Harlow v. SSA*, 577 Fed. Appx. 698, 698-99 (9th Cir. 2014) ("Even assuming that the ALJ erred by discounting Dr. LeBray's opinion based on his failure to distinguish between the effects of Harlow's marijuana use and non-use, we agree with the district court that any such error was harmless because the ALJ provided an independent specific and legitimate reason for assigning Dr. LeBray's opinion little weight.").

### B. Symptom Testimony

Plaintiff also asserts that the ALJ erred by rejecting her symptom testimony. (Doc. 26 at 27.)

#### 1. Legal Standard

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) (citing *Lingenfelter,* 5004 F.3d at 1035-36).

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingerfelter*, 504 F.3d at 1036 (quoting

---

[3] Plaintiff also argues that the ALJ's conclusion in her decision that the functional limitations opined by Dr. Hawks "were so extreme, it can be reasonably inferred [his] opinion[s were] sympathetic and based entirely on the claimant's subjective complaints" is legal error. (Doc. 26 at 24; AR 24-25.) However, because the ALJ sufficiently cited to and discussed inconsistencies between the treatment record and Dr. Hawks' opinions regarding Plaintiff's limitations, as discussed above, the Court finds that the ALJ's statement was not legal error.

- 9 -

*Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected" to produce her pain. *Lingerfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also Carmickle v. Commissioner*, 533 F.3d 1155, 1160-61 (9th Cir. 2008) ("requiring that the medical impairment 'could reasonably be expected to produce' pain or another symptom . . . requires that the causal relationship be a reasonable inference, not a medically proven phenomenon").

Second, if a claimant shows that she suffers from an underlying medical impairment that could reasonably be expected to produce her pain or other symptoms, the ALJ must "evaluate the intensity and persistence of [the] symptoms" to determine how the symptoms, including pain, limit the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c)(1). In making this evaluation, the ALJ may consider the objective medical evidence, the claimant's daily activities, the location, duration, frequency, and intensity of the claimant's pain or other symptoms, precipitating and aggravating factors, medication taken, and treatments for relief of pain or other symptoms. *See* 20 C.F.R. § 404.1529(c); *Bunnell*, 947 F.2d at 346.

At this second evaluative step, the ALJ may reject a claimant's testimony regarding the severity of her symptoms only if the ALJ "makes a finding of malingering based on affirmative evidence," *Lingenfelter*, 504 F.3d at 1036 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 883 (9th Cir. 2006)), or if the ALJ offers "clear and convincing reasons" for finding the claimant not credible. *Carmickle*, 533 F.3d at 1160 (quoting *Lingenfelter*, 504 F.3d at 1036). "The clear and convincing standard is the most demanding required in Social Security Cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

**2.     The ALJ's Treatment of Plaintiff's Symptom Testimony**

Plaintiff was 32 at the time of the administrative hearing and the Commissioner's

decision. (AR 39.) Plaintiff's past relevant work included habilitation technician, mail clerk, telephone sales representative, and fast food cashier. (AR 49.) Plaintiff testified that she was unable to work due to back and knee pain, depression, and headaches. (AR 40-43.)

More specifically, Plaintiff testified that in the morning she generally irons her son's clothes, but is unable to make him breakfast. (AR 46-47.) When her son is at school she reads, does puzzles, crafts, and housework. (AR 47.) Plaintiff claimed that she does things that are "necessary" for her son, such as cooking. (AR 40.) Plaintiff testified that she experiences headaches "about half of the month" and she has to lie on the floor for four to five hours with a cold rag on her head. (AR 40.) Plaintiff also testified that she could sit for 20 to 30 minutes at a time before needing to stand up, she can walk for 15 to 20 minutes and she can lift 10 pounds. (AR 43-44.) Plaintiff asserted that she suffered from depression and heard voices that told her "negative thoughts," but they were less frequent when she was on medication. (AR 42-43.) Plaintiff also claimed that she experienced numbness in her hands and arms that keeps her from sleeping. (AR 44.) Plaintiff described her back pain as sharp pains that run down her legs, but stated that physical therapy and epidurals provided temporary relief. (AR 45.) Plaintiff testified that her knee pain was improved by physical therapy. (AR 45-46.) Finally, Plaintiff testified that she has difficulty concentrating and some anxiety. (AR 47.)

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (AR 24.) The ALJ then found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not entirely credible. (AR 24.) Because there was no affirmative finding of malingering, the ALJ was required to provide clear and convincing reasons for concluding that Plaintiff's subjective complaints were not wholly credible.

The Court finds that the ALJ provided clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony. First, the ALJ noted that despite testimony that Plaintiff's symptoms prohibit her from moving and

completing tasks such as driving, "at various points within her disability applications and within other record evidence," she admitted to completing numerous daily activities and being able to care for her son, which the ALJ found to be inconsistent with her testimony regarding her mobility and the impact of her symptoms. (AR 22-23.)

The Ninth Circuit has stated that a claimant's participation in normal daily activities "does not in any way detract from [her] credibility as to [her] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant may engage in normal activities and "need not vegetate in a dark room in order to be deemed eligible for benefits." *Cooper v. Bowen,* 815 F.2d 557, 561 (9th Cir. 1987). At the same time, the ALJ is not "required to believe every allegation of disabling pain." *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989), and the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113.

Here, as detailed above, the ALJ found that Plaintiff regularly engaged in a number of daily activities that contradicted her claims of debilitation. The ALJ noted that Plaintiff lives alone with her son, cooks meals for him, helps him get ready for school, and exercises with him when her pain is not too severe. (AR 22.) Although Plaintiff alleged she was unable to drive due to her pain, she testified that she occasionally goes to the store, drives her mother to doctors' appointments, engages in light housework, attends church activities and mentors children in her apartment complex. (AR 22, 180-183.) Plaintiff admitted that she attempts to do something she enjoys every day, and included exercise and outdoor activities among the activities that she enjoys. (AR 183.) Importantly, the Ninth Circuit has found that possessing the capabilities to care for a child may be evidence of a claimant's ability to work. *Molina*, 674 F.3d at 1113. ("The

ALJ could reasonably conclude that Molina's activities, including walking her two grandchildren to and from school, attending church, shopping, and taking walks, undermined her claims that she was incapable of being around people without suffering debilitating panic attacks."). Accordingly, the Court finds that the ALJ properly discounted Plaintiff's testimony for this reason.

The ALJ also cited to Plaintiff's treatment record to support her decision to disregard Plaintiff's symptom testimony. (AR 24). In assessing the claimant's credibility, the ALJ must consider "the type, dosage, effectiveness, and side effects of any medication" and treatment, other than medication, that the claimant has received for relief of pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(iv) and (v). Evidence that treatment can effectively control a claimant's symptoms may be a clear and convincing reason to find a claimant less credible. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (stating that "[i]mpairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits."). Further, although the lack of supporting medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his or her credibility analysis. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (while subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects).

Here, the record indicates that Plaintiff's knee problems had significantly improved through physical therapy and medication. (AR 395.) The record further indicates that the medication prescribed to her had a stabilizing effect on her pain. For example, during a September 15, 2010 appointment with Dr. Hawks, Plaintiff reported that her back pain has been controlled by her current medication regimen and overall she was stable. (AR 401.)

Plaintiff argues that her treatment was not conservative because she received four epidural steroid injections. (Doc. 26 at 33.) However, Plaintiff only received four

injections, which improved her pain for a short period of time before she decided to pursue other medications. (AR 338-40). When viewed against the record as a whole, the ALJ's conclusion that Plaintiff's testimony is inconsistent with records showing her pain stabilized and improved is supported by substantial evidence. "The ALJ is responsible for resolving conflicts in the medical record." *See Carmickle*, 533 F.3d at 1164. Based on this record, the Court finds that the ALJ did not err in discounting Plaintiff's testimony because treatment effectively controlled Plaintiff's symptoms. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (an ALJ may infer that a claimant's "response to conservative treatment undermines [claimant's] reports regarding the disabling nature of his pain").

Further, the ALJ noted inconsistencies between Plaintiff's testimony about her headaches and the objective medical evidence. For example, although Plaintiff testified that she suffered from headaches "about half of the month," Dr. Hawks' records indicate that she had stopped complaining of headaches in 2009 until mid-2012. (AR 395, 401, 412.) Likewise, the ALJ noted that Plaintiff's statements regarding alleged side effects from medication are inconsistent with the medical evidence. (AR 24, 184, 197.)

Plaintiff also argues that the ALJ erred in relying on Plaintiff's application for unemployment benefits and the lack of "neurological involvement, muscle wasting, or muscle atrophy normally associated with pain and inactivity" in the medical records in discounting Plaintiff's testimony. (Doc. 26 at 33-34.) The Court agrees that these reasons, alone, are an insufficient basis for discounting Plaintiff's symptom testimony. However, while the Court does not accept all of the ALJ's reasons in support of her adverse credibility determination, the ALJ provided sufficient legally sufficient reasons that are supported by substantial evidence in support of her credibility determination and, therefore, the Court affirms that determination. *See Batson*, 359 F.3d at 1197 (stating that the court may affirm an ALJ's overall credibility conclusion even when not all of the ALJ's reasons are upheld); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (stating that "[e]ven if we discount some of the ALJ's observations of [the claimant's]

inconsistent statements and behavior . . . we are still left with substantial evidence to support the ALJ's credibility determination.").

## IV. Conclusion

As set forth above, the Court finds that the ALJ's opinion is supported by substantial evidence in the record and is free from harmful legal error.

Accordingly,

**IT IS ORDERED** that the Commissioner's disability determination is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and to terminate this action.

Dated this 31st day of March, 2015.

Honorable John Z. Boyle
United States Magistrate Judge